## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| |
|---|
| JOHNNY DEVONE,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>BRITTANY FINLEY,<br><br>　　　　　　　Defendant. |

3:13-CV-00377 (CSH)

## RULING ON DEFENDANT'S MOTION TO DISMISS

### I.　　INTRODUCTION

Plaintiff Johnny Devone brings this lawsuit against Defendant Brittany Finley claiming (1) defamation, (2) false representation, and (3) intentional infliction of emotional distress.  Plaintiff seeks compensatory and punitive damages, as well as other damages and relief as this Court might deem equitable, and states in his Complaint  that "[j]urisdiction of this Court is invoked pursuant to the [C]ourt's diversity jurisdiction" under 28 U.S.C. § 1332, "inasmuch as the Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."  [Doc. 1] at 1.

Defendant moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), and 12(b)(6), contending:

> Plaintiff's claims fail as a matter of law for the following reasons: (1) Plaintiff has failed plausibly to allege an amount in controversy in excess of $75,000; (2) the Complaint fails to satisfy the minimum pleading requirements of Rule 8(a); (3) Plaintiff's claims of defamation and intentional infliction of emotional distress are barred in part by the doctrines of absolute and qualified privilege; (4) Plaintiff's defamation claims fail to satisfy each element of that cause of action; (5) Plaintiff's claim of "false representation" is not a recognizable cause of action, and, to the extend Plaintiff sought to plead a claim of fraud, he

has failed to satisfy Rule 9(b)'s heightened pleading requirements and has failed to satisfy each element of that cause of action; [and] (6) Plaintiff has failed plausibly to state a claim of intentional infliction of emotional distress.

[Doc. 13] at 1.

This matter involves tort allegations which stem from a custody dispute between Defendant, the mother of a young boy, and Plaintiff's son, who is the boy's father. Plaintiff was at all relevant times a member of the Bridgeport Police Department. The details of this custody dispute have been addressed and adjudicated by the Connecticut and Georgia state courts, and this Court will not deeply delve into its specifics. In short: on February 26, 2012, the Georgia Superior Court issued an Emergency Custody Order which awarded Defendant sole custody of her son. *See* [Doc. 13-2] at 21-23. On March 8, 2012, the Connecticut Superior Court issued a written decision according the aforementioned Georgia Court's custody decision full faith and credit. The Connecticut Superior Court also dismissed the contention raised by Plaintiff's son that the Georgia courts lacked jurisdiction to adjudicate the custody dispute "because [he came] before [the Connecticut state] court with unclean hands," and had "engaged in unjustifiable conduct." *See id.* at 7-15.

On the same day, and pursuant to the issuance of the Connecticut court's decision, the Georgia Court entered a final order awarding sole legal and sole physical custody of the child to Defendant and ordering Plaintiff's son to return the child to Defendant's custody. *See id.* at 4-5 (Superior Court of Cobb County, State of Georgia, Order Awarding Sole Legal and Physical Custody of the Minor Child John Michael Devone, Jr. to Plaintiff, dated March 8, 2012). On March 8, 2012 the Georgia Court also ordered all law enforcement officers in Georgia, Connecticut, and any state in which the child might be found to assist Defendant in obtaining custody of the child. *Id.* at 5. Plaintiff's Complaint contains several allegations concerning Defendant's conduct and statements in

the several days following the Georgia Superior Court's March 8, 2012 final order, in which it appears from the pleadings in this action, along with attached exhibits, that the transfer of custody was neither immediate nor seamless. Plaintiff's Complaint also contains allegations that Defendant gave false testimony in Connecticut and Georgia judicial proceedings which were undertaken in relation to the above-discussed court orders.

## II.   LEGAL STANDARDS

Defendant has brought her Motion to Dismiss "[p]ursuant to Rules 8(a), 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure." [Doc. 13] at 1. The first two of these Rules, Rule 8(a) and Rule (9)(b), involve dismissal of a pleading for facial defects. Fed. R. Civ. P. 8(a) provides in relevant part that "a pleading that states a claim for relief," such as Plaintiff's Complaint, must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a) and (a)(2). As the Second Circuit has explained, "Rule 8(a)(2) requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial." *Strunk v. U.S. House of Representatives*, 68 Fed. Appx. 233, 234 (2d Cir. 2003) (internal quotation marks and citations omitted). Thus a complaint which "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" will fail to comply with Rule 8(a)(2). *Id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks omitted).

Under Fed. R. Civ. P. 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b). In order "[t]o satisfy Rule 9(b)

pleading requirements, a plaintiff must identify the time, place, speaker, and sometimes even the content of the alleged misrepresentations." *Naramanchi v. Federal Emergency Management Agency*, 201 F.3d 432, 432 (2d Cir. 1999) (internal quotation marks and citation omitted).  Thus "[c]onclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." *Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 382 Fed. Appx. 107, 108 (2d Cir. 2010).

A motion to dismiss for a failure to state a claim upon which relief may be granted is brought under Fed. R. Civ. P. 12(b)(6).  Such a motion must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Lunardini v. Massachusetts Mut. Life Ins. Co.*, 696 F.Supp. 2d 149, 155 (D. Conn. 2010) (citing *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) and *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).[1]  A court's focus on a motion to dismiss under Rule 12(b)(6) is therefore "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).  For this reason, when

---

[1]   The Court notes that while Plaintiff quotes *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) in his Opposition Memorandum to Defendant's Motion to Dismiss, writing that "[c]ourts have vigorously ruled that a complaint under Rule 12(b)(6) for failure to state a claim for relief should not be dismissed[] 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief,'" *see* [Doc. 22] at 2, in fact such "no set of facts" language as set forth in *Conley* was expressly abrogated in *Bell Atlantic v. Twombly*, 550 U.S. 433, 562-63 (2007) when the United States Supreme Court held that "this famous observation has earned its retirement," and"is best forgotten."  Thus the pleading standard that actually governs motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is as set forth *supra*, i.e., "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

"deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Moore v. Mara*, 3:08-CV-01946, 2010 WL 3270223 at *3 (D. Conn. August 17, 2010). However, while a complaint need not contain detailed factual allegations to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus a plaintiff must do more than provide labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1), under which a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support or in opposition to a challenge to subject matter jurisdiction" and the "district court also may inquire, by affidavits or otherwise, into the facts as they exist." *Tuccio Development, Inc. v. Town of Ridgefield*, No. 3:06-CV-01821, 2008 WL 749855 at *1 (D. Conn. March 19, 2008) (quoting *Matos v. United States Dept. of Housing & Urban Development*, 995 F. Supp. 48, 49 (D. Conn. 1997) and *Land v. Dollar*, 330 U.S. 731, 735 (1947)) (internal quotation marks omitted).

5

In general, it is the party which asserts that subject matter jurisdiction does indeed exist – here, Plaintiff – who bears the burden of proving it by a preponderance of the evidence; all ambiguities and inferences will be drawn in that party's favor.  *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  However, in a case in which a court's subject matter jurisdiction is open to question as to whether there is a legal possibility of recovery of a required jurisdictional amount, it is the burden of the party *opposing* the court's jurisdiction – here, Defendant – to demonstrate that the "legal impossibility of [such] recovery" on Plaintiff's part is "so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim."  *Gibson v. Scrap,* F.Supp. 2d -, No. 3:12-CV-00583, 2013 WL 1092905 at *4 (D.Conn. March 14, 2013) (citations omitted).

The Court notes that the overarching function of a motion to dismiss under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) "is merely to assess the legal *feasibility* of the complaint, not to assay the weight of evidence which might be offered in support thereof" and, accordingly, the "issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims."  *Bici v. Napolitano*, No. 3:10-CV-01991, 2012 WL 642781 at *1 (D. Conn. Feb. 28, 2012) (emphasis added) (internal quotation marks omitted) (quoting *Mytych v. May Dept. Store Co.*, 34 F.Supp. 2d 130, 131 (D. Conn. 1999) and *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D. Conn. 1990)).

## III.   LEGAL DISCUSSION

### A.    Defendant's Fed. R. Civ. P. 12(b)(1) Claims

As Defendant's Fed. R. Civ. P. 12(b)(1) claims are jurisdictional, the Court will address them first.  A federal court has limited jurisdiction pursuant to Article III of the Constitution.  In order for this Court to exercise subject matter jurisdiction, either (1) a plaintiff must set forth a colorable claim

arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331;[2] or (2) there must be complete diversity of citizenship between a plaintiff and all defendants *and the amount in controversy must exceed $75,000.* 28 U.S.C. § 1332 (a) and (a)(1); *see also, e.g., Dymon v. Laffaye*, No. 3:12-CV-00320, 2012 WL 774996 at *1 (D. Conn. March 7, 2012). If subject matter jurisdiction is lacking, dismissal of an action from federal court is mandatory. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Manway Constr. Co. v. Housing Authority of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983).

In the case at bar, the question on which this Court's subject matter jurisdiction turns is whether the sum or value of the matter in controversy must exceed $75,000 exclusive of interests and costs, as required pursuant to 28 U.S.C. § 1332(a). Plaintiff asserts in his Complaint that this is the case – *see* [Doc. 1] at 1, 5, and 6 – in what Defendant terms a "conclusory and implausible" fashion. *See* [Doc. 13-1] at 9. As Defendant concedes in her Motion to Dismiss and accompanying Memorandum of Law, it is her burden to demonstrate that there is a virtual legal impossibility that Plaintiff could recover a sum in excess $75,000 for the claims Plaintiff asserts in his Complaint. *See* [Doc. 13-1] at 11. "This is so because when a party chooses to proceed in federal court," that party either "knows or should know whether [the] claim is within the statutory requirement as to amount." *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal quotation marks and citations omitted). The Second Circuit has repeatedly noted its recognition of a "'*rebuttable presumption that the face of the complaint is a good faith representation* of the actual

---

[2]   As Plaintiff's Complaint sets forth no facts or circumstances that potentially give rise to a federal claim under the Constitution or federal statute, there is no basis for "federal question" jurisdiction pursuant to 28 U.S.C. § 1331.

amount in controversy.'" *Scherer v. Equitable Life Assurance Society of U.S.,* 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)) (emphasis added). Prior Second Circuit rulings have set a notably "high bar for overcoming this presumption. The legal impossibility of recovery must be so ceratin as virtually to negative the plaintiff's good faith in asserting the claim;" consequently even "where [a plaintiff's] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted," and in order "[t]o overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (internal quotation and grammatical marks and citations omitted); *see also, e.g.*, *Gibson v. Scap*, 2013 WL 1092905 at *4; *Braden v. Murphy*, No. 3:11-CV-00884, 2012 WL 1069188 at *2 (D.Conn. March 29, 2012).

In support of her contention that there is an absolute legal impossibility that Plaintiff's claims could lead to a recovery which meets or exceeds the jurisdictional amount, Defendant avers that Plaintiff's "Complaint does not describe any specific injury, pecuniary or otherwise, suffered by Plaintiff, let alone one that might plausibly result in damages in excess of $75,000," but, instead, "Plaintiff simply alleges, without factual support, that '[t]he amount of damages to Plaintiff exceeds $75,000.'" [Doc. 13-1] at 11 (quoting [Doc. 1] at 5-6). This Court concurs that Plaintiff's Complaint, which contains counts of defamation, false representation, and intentional infliction of emotional distress, and which avers that the amount of damages to Plaintiff for *each count* exceeds $75,000, *see* [Doc. 1] at 5-6, does not contain descriptions of any specific monetary injury nor explain any reason for its conclusion that a sum in excess of $225,000 ought to be recoverable. While the Court does not dispute Defendant's skepticism with respect to Plaintiff's ability to recover this aggregate

sum, in order "to overcome the face-of-the-complaint presumption, [Defendant] must show '*to a legal certainty*' that the amount recoverable does not meet the jurisdictional amount." *See Gibson v. Scrap,* 2013 WL 1092905 at *4 (emphasis added).  Defendant has not and cannot meet the high standard set forth in controlling law.

As the Second Circuit has stated, when "a plaintiff is seeking unliquidated damages in a tort action, a district court should permit the case to proceed ... [w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d at 785 (citations omitted).  The Court must accordingly resolve any doubt it might have in favor of Plaintiff's pleadings.  Given such a standard, the Court cannot conclude that there is a "legal impossibility of recovery ... so certain as virtually to negative the plaintiff's good faith in asserting the claim." *See id.* (citation omitted).  Diversity jurisdiction would be present if recoverable damages on any single count alleged in the Complaint would exceed $75,000 by $1.  As any "doubt should be resolved ... in favor of the subjective good faith of the plaintiff," *see id.* at 785-86, the Court here resolves its doubt as to the jurisdictional amount in favor of Plaintiff.

## B.     Defendant's Fed. R. Civ. P. 8(a) Claims

Pursuant to Fed. R. Civ. P. 8(a) and (a)(2), a "pleading that states a claim for relief," such as Plaintiff's Complaint, must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In support of this contention, Defendant states that "Plaintiff fails in Count One" of the Complaint, which concerns defamation, "to identify what statements are the subject of his defamation claim, how those statements were false and defamatory, and how they harmed his reputation" and, consequently, Plaintiff's "claim could be dismissed pursuant to Rule (a) for failing to provide sufficient information to enable [Defendant] to respond."

[Doc. 13] at 14.  Defendant likewise contends that Court Two of the Complaint, which concerns false representation, fails under Rule 8(a) to state a claim upon which relief can be granted, as "'[f]alse representation' does not exist as an independent claim under Connecticut law," *id.* at 20, and that the Third Court of Plaintiff's Complaint, which alleges intentional infliction of emotional distress, also fails under the pleading requirements of this Federal Rule.  *Id.* at 21.  While in a Fed. R. Civ. P. 12(b)(6) inquiry, addressed in detail *infra*, a court will examine whether those facts alleged within a Complaint could *plausibly* support a claim, and, accordingly, whether it is plausible that such a claim is one upon which relief may be granted, a Fed. R. Civ. P. 8(a) inquiry *focuses solely upon a complaint's language* rather than upon any the application or evaluation  of its contents.

As the Second Circuit has explained, "Rule 8(a)(2) requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief.  The purpose of this requirement is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial."  *Strunk v. U.S. House of Representatives*, 68 Fed. Appx. 233, 234 (2d Cir. 2003) (internal quotation marks and citations omitted).  Thus a complaint which "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" will fail to comply with Rule 8(a)(2).  *Id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks omitted).

While the Court agrees with Defendant that Plaintiff's Complaint is at turns confused, ambiguous, and vague, it does not find Plaintiff's Complaint to be so unintelligible that "its true substance is well disguised."  *See id.*  The three Counts Plaintiff attempts to bring in his Complaint are clearly, if occasionally puzzlingly, articulated, and for each Count Plaintiff has indicated (if not with careful particularity) those factual allegations contained within his Complaint to which he looks

10

for support. When a "court underst[ands] the allegations sufficiently to determine that [a party] *could* state a claim for relief, ... the complaint has satisfied Rule 8." *Kittay v. Kornstein*, 230 F.ed 531, 541 (2d Cir. 2000) (emphasis added). Here, the Court finds that "the [C]omplaint's allegations are more than sufficiently clear 'to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial.'" *Id.* citation omitted); *see also, e.g., Boykin v. KepCorp*, 521 F.3d 202, 212 (2d Cir. 2008). Accordingly, and despite the problems contained therein, the Court does not dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 8(a).

## C.    Defendant's Fed. R. Civ. P. 12(b)(6) Claims

The Court has stated *supra* that it will not dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 8(a); it will, however, dismiss all three Counts of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

To reiterate the governing standards: a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Lunardini v. Massachusetts Mut. Life Ins. Co.*, 696 F.Supp. 2d at 155 (citations omitted). A court's focus on a motion to dismiss under Rule 12(b)(6) is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims," *see Villager Pond, Inc. v. Town of Darien*, 56 F.3d at 378; for this reason, when "deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Moore v. Mara*, 2010 WL 3270223 at *3. However, a complaint will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678(citation omitted). Thus "a formulaic

recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  In short, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

For the reasons that follow, the Court will dismiss each of the three Counts of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### 1.     Count I:  Defamation

Count I of Plaintiff's Complaint alleges defamation, stating in part that "Defendant caused the publication of a writing to a third party;" that this "writing identified the Plaintiff" and "was defamatory" to him, and its "publication caused [him] harm." [Doc. 1] at ¶¶ 26-29.  The Court notes that at times Count I appears to make reference to a singular instance rather than to multiple instances – e.g., it repeatedly makes reference to "*a* writing" – and that, in addition, certain aspects of Count I appear solely to be addressing *written* defamation, repeatedly referring to "a *writing*" and to "*libel* per se."  Liberally construed, however, Plaintiff's defamation claim, which specifically incorporates ¶¶1-25 of the Complaint, may be understood to be predicated upon eight factual allegations contained therein.  These allegations are:

- "In a proceeding on February 26, 2013 [Defendant] falsely testified under oath before a judge of the Cobb County Georgia Superior Court that her son had resided exclusively in Georgia until January 26, 2012." [Doc. 1] at ¶15.

- "On February 28, 2013 [Defendant] falsely testified under oath before a judge of the Connecticut Superior Court that her son had never been in Connecticut for any reason prior to November 2011." *Id.* at ¶16.

- "On or about March 11, 2013 [Defendant] caused a false report to be made to the Connecticut State's Attorney resulting in the issuance of a search warrant for the Plaintiff's home." *Id.* at ¶20.

12

- "On or about March 11, 2013 [Defendant] falsely claimed to staff of the Connecticut Post that her son, John Devone, Jr., was 'missing.'" *Id.* at ¶21

- "On or about March 11, 2013 [Defendant] claimed that the minor child was being held at the home of his grandfather, Johnny Devone, against her will." *Id.* at ¶22.

- "On or about March 11, 2013 [Defendant] falsely claimed that the boy's father, Plaintiff's son, had tricked her into letting him take the boy from her Georgia home in August 2012." *Id.* at ¶23.

- "On or about March 11, 2013 [Defendant] falsely claimed that Bridgeport police blocked her and City Sheriff David Goodman from retrieving the boy." *Id.* at ¶24.

- "On or about March 11, 2013 [Defendant] falsely claimed that the Bridgeport police were 'protecting one of their own' by not assisting her to retrieve her son." *Id.* at ¶25.

## A.    Defamation Under Connecticut Law

Connecticut courts "accept the standard common-law definition of defamation as set forth in § 559 of Restatement (2d) Torts," which is to say that they accept "that 'a communication is defamatory if it tends so as to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Graham v. Boehringer Ingelheim Pharmaceuticals*, No. CV040488908S, 2007 WL 3317528 at *2 (Conn. Super. Ct. 2007) (citing *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (Conn. 2004) and *Q.S.P. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 356 (Conn. 2001)); *see also, e.g., Iosa v. Gentiva Health Services, Inc.*, 299 F.Supp. 2d 29, 37 (D.Conn. 2004). Essentially, in order to state a claim for defamation, a plaintiff must allege that a defendant published false statements that harmed the plaintiff when the defendant was not otherwise privileged by law to do so.

The Connecticut Supreme Court recently reaffirmed and restated what Connecticut courts have long held: that under Connecticut law in order "[t]o establish a prima facie case of defamation"

13

a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48 (Conn. 2013) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009)); *see also, e.g., Hopkins v. O'Connor*, 282 Conn. 821, 838 (Conn. 2007); *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (Conn. 2004); *Zello v. Birk*, CV10-6004385, 2011 WL 3587396 at *1 (Conn. Super. July 15, 2011), *Integrated Sec. Solutions, LLC v. Security Technology Systems, LLC*, No. 4001811, 2007 WL 2757141 at *2 (Conn. Super. Sept. 11, 2007) (citation omitted). "*It is for the Court to decide whether the defendant's statements were capable of bearing a defamatory meaning*, and it is for [a] jury to decide if the defendant's statements were, in fact, so understood by its recipients." *Dongguk University v. Yale University,* No. 08-CV-00441, 2012 WL 441250 at *6 (D.Conn. Feb. 10, 2012) (emphasis added).

For a statement to be defamatory, it must be one of fact, rather than one of opinion; thus it must "relate[] to an event or state of affairs that existed in the past or present and is capable of being known," as opposed to one which "is a personal comment about another's conduct, qualifications or character [even if it] has some basis in fact." *Id.* at 38 (quoting *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111 (Conn. 1982)).  In order for a statement to be considered defamatory, it must also be false; "truth is an absolute defense to an allegation of defamation." *Skakel v. Grace*, 3:12-CV-01669, 2014 WL 902675 at *4-5 (D.Conn. March 7, 2014).  A "defendant will not be held liable as long as the statements at issue are substantially true." *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554 (Conn. 1994).  Thus a "defendant need not establish the

14

literal truth of the allegedly defamatory statement; rather, substantial truth provides an affirmative defense" and consequently "[w]here the main charge, or gist, of the [defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Skakel v. Grace*, 2014 WL 902675 at *4-5 (internal quotation marks and citations omitted).[3]

## B.    Allegations Which Do Not Identify Or Indicate the Plaintiff

A required element of a prima facie case of defamation is that an allegedly defamatory statement must *identify the plaintiff* to a third person. *See, e.g., Simms v. Seaman*, 308 Conn. 523, 547-48 (Conn. 2013) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009)); *see also, e.g., Hopkins v. O'Connor*, 282 Conn. 821, 838 (Conn. 2007); *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (Conn. 2004); *Zello v. Birk*, CV10-6004385, 2011 WL 3587396 at *1 (Conn. Super. July 15, 2011), *Integrated Sec. Solutions, LLC v. Security Technology Systems, LLC*, No. 4001811, 2007 WL 2757141 at *2 (Conn. Super. Sept. 11, 2007) (citation omitted).

Accordingly, in order to satisfy this element and in order "[t]o prevail on [his] common-law

---

[3]    The Court notes that "[w]hile the Second Circuit does not require a plaintiff to plead the exact alleged defamatory words, the Federal Rules of Civil Procedure require that a complaint must provide sufficient information to enable a defendant to respond." *Mordhorst v. Skinner Valve Division of Parker Hannifin Corp.*, No. 3:99-CV-00561, 2001 WL 863433 at *2 (D.Conn. 2001) (citations omitted).  Thus pursuant to Fed. R. Civ. P. 8(a), discussed *supra*, courts will dismiss defamation counts when the pleadings lack the requisite specificity by failing, e.g., to state the speaker of the statements, the context in which the statements were made, when the statements were made, whether the statements were written or verbal, and whether the statements were communicated to a third party; or to provide the detail necessary for a court to determine which statements were allegedly defamatory. *Id.* (citations omitted).  It is true that aspects of Plaintiff's defamation complaint could be held to fall under such a category.  However, because as discussed there is no plausible way Plaintiff's allegations of defamation, even when very liberally construed, could survive Defendant's motion for dismissal under 12(b)(6), the Court need not and does not address Fed. R. Civ. P. 8(a) with respect to such claims.

defamation claim, [Plaintiff] must prove that [Defendant] published false statements *about* [him] that caused pecuniary harm." *Dontigney v. Paramount Pictures Corp.*, 411 F.Supp. 2d 89, 92 (D.Conn. 2006) (quoting *Daley v. Aetna Life and Causalty Co.*, 249 Conn. 766, 795 (Conn. 1999) (emphasis in original); *see also, e.g., Dongguk University v. Yale University*, 2012 WL 441250 at *7. "Where the alleged defamatory statements [are] not made about" a plaintiff, "they do not satisfy [an] element crucial to prevailing on a common-law defamation claim." *QSP, Inc. v. Aetna Casualty and Surety Co.*, 256 Conn. 343, 355-56 (Conn. 2001). Thus a "plaintiff must reasonably understand under all the circumstances that an allegedly defamatory statement was intended to refer to him." *Dontigney v. Paramount Pictures Corp.*, 411 F.Supp. 2d at 92 (citing Restatement (Second) of Torts § 564) (internal quotation marks omitted).

While, as the Second Circuit has noted, "[t]here are indeed cases ... where a statement was held to be 'of and concerning' the plaintiff even though on its face [the statement] was aimed at another person or entity," the common denominator of such cases is that in each case "the statement, though not naming the plaintiff, could have been understood by a reasonable [recipient] as being, in substance, actually *about* him or her." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399 (2d Cir. 2006). Examples of cases found to fall under such a category include those a plaintiff after whom a which fictional characters had been named; a plaintiff whose reputation was linked with a church which bore his name; and a plaintiff or a chief executive officer of a corporation who had made all the entity's business decisions after such corporation had been alleged to have engaged in fraudulent and corrupt practices. Despite his claim that Defendant caused the publication of a writing to a third party which "identified the Plaintiff, such that it would be reasonably understood that it was about the Plaintiff," *see* [Doc. 1] at ¶¶ 26-27, the factual allegations set forth in Plaintiff's Complaint in

¶¶1-25 do not at all suggest that such a case exists in this action.

Indeed, six of the above eight allegations upon which Plaintiff appears to rely in his claim of defamation do not involve Defendant identifying Plaintiff to any third person, nor do they appear to be reasonably understood to be specifically *about* Plaintiff.  They are as below, with the subject of each allegation italicized:

- "In a proceeding on February 26, 2013 [Defendant] falsely testified under oath before a judge of the Cobb County Georgia Superior Court that *her son* had resided exclusively in Georgia until January 26, 2012." [Doc. 1] at ¶15 (emphasis added).

- "On February 28, 2013 [Defendant] falsely testified under oath before a judge of the Connecticut Superior Court that *her son* had never been in Connecticut for any reason prior to November 2011." *Id.* at ¶16 (emphasis added).

- "On or about March 11, 2013 [Defendant] falsely claimed to staff of the Connecticut Post that *her son*, John Devone, Jr., was 'missing.'" *Id.* at ¶21 (emphasis added).

- "On or about March 11, 2013 [Defendant] falsely claimed that [her] *boy's father, Plaintiff's son*, had tricked her into letting him take the boy from her Georgia home in August 2012." *Id.* at ¶23 (emphasis added).

- "On or about March 11, 2013 [Defendant] falsely claimed that [the] *Bridgeport police* blocked her and City Sheriff David Goodman from retrieving the boy." *Id.* at ¶24 (emphasis added).[4]

- "On or about March 11, 2013 [Defendant] falsely claimed that the *Bridgeport police*

---

[4]  It is true that "[o]ne who publishes defamatory matter concerning a group or a class of persons is subject to liability [to] an individual member of [such group] if, but only if, (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member." *Dontigney v. Paramount Pictures Corp.*, 411 F.Supp. 2d at 92 (citing Restatement (Second) of Torts § 564A).  During the relevant period Plaintiff was a member of the Bridgeport Police Department, and the allegedly defamatory statements to which Plaintiff makes reference in ¶¶ 24-25 of his Complaint do certainly concern the conduct of *other members* of the Bridgeport Police or, possibly, that of the Bridgeport Police Department as a *singular* entity; however, they do not allege any conduct engaged in by *Plaintiff*.  If anything, the statements alleged at ¶25 are making specific reference to members of the Bridgeport Police Department who *are not* Plaintiff.

17

were 'protecting one of their own' by not assisting her to retrieve her son." *Id.* at ¶25 (emphasis added).[5]

Even accepting as true all factual allegations in Plaintiff's Complaint and drawing all inferences in a light most favorable to Plaintiff – as it must for purposes of adjudicating a motion to dismiss under 12(b)(6) – the Court must conclude that the allegations contained in ¶¶ 15, 16, 21, 23, 24, and 25 do not contain sufficient factual matter to state a prima facie claim against Defendant for relief for defamation that is plausible on its face, as none of these allegations concern statements made about Plaintiff. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. at 678.

C.     Allegations Which Are Absolutely Privileged

Connecticut courts have repeatedly stated that "[t]he absolute privilege for statements made in the course of a judicial proceeding applies ... to defamation claims." *Id.* (citing *DeLaurentis v. New Haven*, 220 Conn. 225, 265 (Conn. 1991)).  The allegations contained in ¶15 and ¶16 of Plaintiff's Complaint – i.e., those which concern assertions that Defendant "falsely testified under oath before a judge" – are without doubt "communications uttered or published in the course of judicial proceedings" and accordingly "are absolutely privileged [so] long as they are in some way pertinent to the subject of the controversy," which they were pursuant to the facts alleged within Plaintiff's Complaint. *See Gallo v. Barile*, 284 Conn. 459, 465-66 (Conn. 2007) (internal quotation

---

[5]   The Court must note that the statement attributed to Defendant at ¶25 of the Complaint – i.e., that Defendant, presumably to the staff of the Connecticut Post, "falsely claimed that the Bridgeport police were 'protecting one of their own' by not assisting her to retrieve her son," in actuality is attributed within the relevant Connecticut Post article – attached by Plaintiff as an exhibit to her Memorandum in Opposition to Plaintiff's Motion to Dismiss – *not to Defendant but rather to City Sheriff David Goodman*. *See* [Doc. 22-1] at 4.  A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) is to be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Lunardini v. Massachusetts Mut. Life Ins. Co.*, 696 F.Supp.2d 149, 155 (D.Conn. 2010) (citations omitted).

marks and citation omitted).  "The [sorts of] judicial proceeding[s] to which [absolute] immunity

attaches ... include[] any hearing before a tribunal which performs a judicial function, ex parte or

otherwise, and whether the hearing is public or not." *Craig v. Stafford Construction, Inc.*, 271 Conn.

78, 84-85 (Conn. 2004).

In making a determination as to whether a particular statement is made in the course of

judicial proceeding, a "court must decide as a matter of law whether the allegedly [defamatory]

statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial

proceeding, so as to qualify for the privilege.  The test for relevancy is generous, and 'judicial

proceeding' has been defined liberally to encompass much more than civil litigation or criminal

trials." *Hopkins v. O'Connor*, 282 Conn. 821, 830-31, 839 (Conn. 2007).  Given this standard, even

were the allegations included at ¶¶15-16 to adequately concern Plaintiff, which the Court has held

*supra* they do not, due to absolute privilege they could not support a claim of defamation.

### D.     Statements Not Alleged to Have Been False

Paragraph 22 of Plaintiff's Complaint avers that "[o]n or about March 11, 2013 [Defendant]

claimed that the minor child was being held at the home of his grandfather, Johnny Devone, against

her will." [Doc. 1] at ¶22.[6]  The Complaint contains absolutely no allegation or suggestion that this

alleged statement on behalf of Defendant was false.  Connecticut courts have repeatedly stated that

a statement *must be false* to be actionable as defamation.  *See, e.g., Skakel v. Grace*, 2014 WL

_____

[6]  Arguably the subject of this statement is not Plaintiff, but rather Defendant's son and
Plaintiff's grandson – i.e., the individual who was alleged to have been held – nonetheless in
deference to Plaintiff and the applicable standards of adjudicating a motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6), the Court will assume *arguendo* that this statement sufficiently
identifies Plaintiff as required by the prima facie test for a claim of defamation under Connecticut
law.

902675 at *4-5; *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554 (Conn. 1994). Without any sort of averment that Defendant's statement as described at ¶22 was indeed false, the allegation at ¶22, even when accepted as true, does not contain sufficient factual matter to state a prima facie claim of defamation.  In addition, as addressed *infra*, this allegation makes no mention of *to whom* Defendant allegedly made such publication, although through context the Court construes the third party to have been the staff of the Connecticut Post.

> E.     Allegations Which Do Not Identify A Third Party

The allegations contained at ¶¶22, 23, 24, and 25 of Plaintiff's Complaint do not specify to *whom* Defendant made the  defamatory statements attributed to her within each of these paragraphs. However, given the Connecticut Post article exhibits which Plaintiff attached to her Memorandum in Opposition to Plaintiff's Motion to Dismiss, the Court construes that such third party in each above-cited instance is the "staff of the Connecticut Post," to whom Plaintiff alleges Defendant made other claims on the same date as those claims Defendant is alleged to have made those statements with which ¶¶ 21, 22, 23, 24, and 25 are concerned.  *See, e.g.,* [Doc. 1] at ¶21.  ("On or around March 11, 2013....")

> F.     Allegations Concerning the "False Police Report"

The remaining factual allegation contained in Count I of Plaintiff's Complaint on which Plaintiff appears to rely in order to set forth a claim of defamation is set forth at ¶20.  As with the other seven allegations, addressed *supra*, the allegations contained at ¶20 cannot survive a 12(b)(6) motion to dismiss as Defendant's actions as asserted therein are entitled to qualified immunity and Plaintiff has not pleaded any exception thereto.  Indeed, Plaintiff states at ¶20 that "[o]n or about March 11, 2013 [Defendant] caused a false report to be made to the Connecticut State's Attorney

resulting in the issuance of a search warrant for the Plaintiff's home." [Doc. 1] at ¶20.  On its face this allegation is entitled to qualified privilege from defamation claims.  Such "qualified immunity exists in ... areas that have a connection to the judicial process, particularly [when] constitutional rights of an individual are concerned."  *Gallo v. Barile*, 284 Conn. at 467 (internal quotation marks and citation omitted).  Thus, for example, "a complaining witness who initiates a prosecution and procures the issuance of an arrest warrant has ... a qualified immunity at common law."  *Id.* (internal quotation marks and citation omitted).  A qualified privilege generally protects allegedly false or defamatory statements which have not been made maliciously.  *See, e.g., Gaudio v. Griffin Health Services Corp.*, 249 Conn. 523, 545 (Conn. 1999) (holding that "[a]lthough a qualified privilege insulates many defamatory statements and shields many defendants from liability, the privilege does not protect a defendant who makes statements that are both defamatory and malicious.").[7]  Plaintiff's Complaint alleges no malice of any sort with respect to his defamation claim, or the allegations contained within ¶20.

In response to Defendant's contentions that the allegations contained within ¶20 are subject to qualified immunity, Plaintiff attempts to argue that although he has not asserted that the statements alleged at ¶20 were made with malice, "[m]alice is a question of fact that cannot be determined upon a motion to dismiss. "[Doc. 22] at 6.  Presumably Plaintiff is suggesting that since

---

[7]   The Court notes that the nature of the malice required to overcome qualified immunity does not appear to be fully settled by the courts: the "malice required to overcome a qualified privilege in defamation cases is malice in fact *or* actual malice."  *Hopkins v. O'Connor*, 282 Conn. at 845 (emphasis added).  While there is a distinction under Connecticut law between actual malice and malice in fact – "actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false," whereas "[m]alice in fact is sufficiently shown by proof that the publications were made with improper and unjustifiable motives," *see id.* at 847 – Plaintiff's Complaint alleges absolutely no malice of any sort with respect to his defamation claim, or the allegations contained within ¶20.

malice is a question of fact, the Court ought not to dismiss any defamation claim which stems from allegations contained within ¶20 of his Complaint, despite the fact that he has not alleged any pertinent malice on Defendant's behalf within his pleadings.  It is true that a court ought not seek to determine the *veracity* of any claims of malice which have been voiced within pleadings at the stage of litigation; indeed, were any such claims contained *within* Plaintiff's Complaint the Court would, for purposes of adjudicating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), accept them as true.  However, the critical issue here is not whether the Court is determining whether Plaintiff's allegations of malice are *true*; the issue is that Plaintiff has *failed to make any allegation of malice whatsoever* within his Complaint.  For this reason, any defamation claim predicated upon ¶20 cannot survive a 12(b)(6) motion to dismiss.[8]

### G.   Allegations Concerning Libel Per Se

While it has already given reasons behind its dismissal of Count I pursuant to Fed. R. Civ. P. 12(b)(6) which on their own would suffice, the Court briefly addresses Plaintiff's somewhat puzzling mention of libel per se in ¶¶30-33 of Count I of his Complaint.  Connecticut law understands defamation to be comprised of two torts: that of libel and that of slander.  "Libel ... is *written* defamation," whereas "[s]lander is *oral* defamation."  *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 850, 850 (Conn. App. Ct. 2005) (emphasis added); *see also, e.g.*, *Lega Siciliana Social Club, Inc. v. St. Germaine*, 77 Conn. App. 846, 851-52 (Conn. App. Ct. 2003) (same).  Libel

---

[8]  In addition, the Court notes that it is not altogether clear what exactly is entailed in one's "caus[ing]" a false report to be made to the Connecticut State's Attorney, which Plaintiff alleged Defendant did, an act which allegedly resulted in the issuance of a search warrant for Plaintiff's home.  Moreover, nowhere does the Complaint state that whatever publication or statement this entailed on behalf of Defendant was itself not true.  (It seems at least theoretically possible for a true statement to lead to a "false report.")

per se is, in turn, a subcategory of libel: a sort of written defamation "the defamatory meaning of which is *apparent on the face* of the statement." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. at 850 (emphasis added). Plaintiff seems to predicate his claim of libel per se, which he does not distinguish from his more general count of "defamation," the captioned tort claim of Count I, on the allegation that Defendant *caused* the publication of a writing to a third party which both identified and was defamatory to Plaintiff. See ¶¶26-28.

The Court need not and does not reach the question of whether or under what sort of circumstances an act, or possible oral statement, which "causes" another to produce an allegedly defamatory writing constitutes libel as opposed to slander, as Plaintiff's Complaint contains no alleged statements on behalf of Defendant which are on their faces defamatory to Plaintiff. Perhaps in recognition of this, Plaintiff avers that Defendant's conduct as alleged in ¶¶20-25 "would be libel per se because it charges Plaintiff with a crime," because "it charges [Plaintiff] with improper conduct or lack of skill in his profession and is likely to injure him in his profession or calling;" because it "falsely charges [Plaintiff] with incompetence or dishonesty in office;" and because "the statements falsely charge[] [Plaintiff,] a professional person[,] with general incompetence." [Doc. 1] at ¶¶30-33.[9]  The relevant Complaint paragraphs are:

- "On or about March 11, 2013 [Defendant] caused a false report to be made to the Connecticut State's Attorney resulting in the issuance of a search warrant for the Plaintiff's home." *Id.* at ¶20.

- "On or about March 11, 2013 [Defendant] falsely claimed to staff of the Connecticut Post that her son, John Devone, Jr., was 'missing.'" *Id.* at ¶21

---

[9] *Nota bene*: the Court has inserted "Plaintiff" in brackets where the Complaint uses the words "one," "someone," and "a professional person," and assumes that Plaintiff intended to make these statements in reference to himself.

- "On or about March 11, 2013 [Defendant] claimed that the minor child was being held at the home of his grandfather, Johnny Devone, against her will." *Id.* at ¶22.

- "On or about March 11, 2013 [Defendant] falsely claimed that the boy's father, Plaintiff's son, had tricked her into letting him take the boy from her Georgia home in August 2012." *Id.* at ¶23.

- "On or about March 11, 2013 [Defendant] falsely claimed that Bridgeport police blocked her and City Sheriff David Goodman from retrieving the boy." *Id.* at ¶24.

- "On or about March 11, 2013 [Defendant] falsely claimed that the Bridgeport police were 'protecting one of their own' by not assisting her to retrieve her son." *Id.* at ¶25.

As an initial matter, none of these paragraphs aver that Defendant charged Plaintiff with a crime. In addition, as addressed in detail *supra*, four of these six paragraphs are not even made with respect to *Plaintiff*. None allege that Defendant charged *Plaintiff* with "improper conduct or lack of skill in his profession," with incompetence or dishonesty in office, or with general incompetence. Furthermore, and most critically for purposes of a libel per se analysis, none of these allegations are at all facially defamatory to *Plaintiff*. In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). A key element of a tort claim for libel per se is that the allegedly defamatory writing at issue must be clearly and facially defamatory to the plaintiff; none of the allegations contained within ¶¶20-25 are of that character.

For the aforementioned reasons, Plaintiff's defamation claim, contained at Count I of the Complaint, is dismissed by the Court pursuant to Fed. R. Civ. P. 12(b)(6).

## 2.   Count II:  False Representation

Count II of Plaintiff's Complaint is labeled "False Representation."  While puzzlingly the

language in this Count vacillates between references to a single implicated statement made by Defendant and to multiple implicated statements made by Defendant, Count II essentially alleges that "Defendant made ... false representation[s] as ... statement[s] of fact" and that such statements were either "untrue and known to be untrue by the Defendant," or, in the alternative, were made by Defendant "with reckless disregard for the truth of the matter." [Doc. 1] at ¶¶26-27.  Plaintiff avers that the allegations concerning such false representations of fact are contained within ¶¶20-25 of his Complaint, which, as noted *supra*, are those Complaint paragraphs addressing statements Defendant allegedly made to "cause" a police report to be written, along with statements Defendant presumably made to the staff of the Connecticut Post.  In support of this false representation claim, Plaintiff also avers that "Defendant made the statements to induce judicial and law enforcement officials to act on those statements and to secure the retrieval of her son when she knew or should have known that Plaintiff had not engaged in the conduct she accused him of." *Id.* at ¶28.

In support of her Motion to Dismiss, Defendant first notes that "'[f]alse representation' does not exist as an independent claim under Connecticut law," but, rather, "'false representation' is often an element of a claim of defamation or fraud." [Doc. 13-1] at 20.  "[C]onstruing the Complaint liberally," Defendant concludes, "it appears as though Count Two attempts to state a claim for fraud." *Id.*  The Court does not entirely agree with Defendant's analysis, but it reaches a parallel conclusion.  While there may not be a tort cause of action referred to in Connecticut law as "*false representation*," there is one which is referred to as "*fraudulent misrepresentation*" as well as, at turns, "intentional misrepresentation."  The essential elements are identical with those of a fraud claim under Connecticut law – in order to prevail on this claim, a Plaintiff must show that "(1) a false representation was made as a statement of fact; (2) [this statement] was untrue and known to be

untrue by the party making it; (3) [this statement] was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Barbara Weisman, Trustee v. Kaspar*, 233 Conn. 531, 539 (Conn. 1995).

The Court will accordingly construe Count II of Plaintiff's Complaint to allege a claim of fraudulent misrepresentation, which in practical terms is identical to construing Count II as a claim for fraud. However, even so-construing Count II, and applying the standard of law under which a Court must adjudicate a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must dismiss Plaintiff's claim for fraudulent misrepresentation in its entirety. Even putting aside the reams of caselaw which explicitly hold that a plaintiff cannot make general assertions of fraudulent misrepresentations, but must plead particular facts demonstrating what the representations were and how they were false – *see, e.g., Maruca v. Phillips*, 139 Conn. 79, 81 (Conn. 1952) ("[w]here a claim for damages is based upon fraud, there mere allegation that a fraud has been perpetrated is insufficient; the specific acts relied upon must be set forth in the complaint"); *St. Denis v. De Toledo*, No. CV000180606S, 2002 WL 845689 at *5 (Conn. Super. April 5, 2002); *Chestnut v. Kent*, No. CV97036653, 1998 WL 203394 at *2 (Conn. Super. April 17, 1998), and, as well, the exacting pleadings requirements for a claim of fraud specifically set forth by Fed. R. Civ. P. 9(b) – Plaintiff's claim for false misrepresentation *must fail because Plaintiff was not the party induced into action* in any of the pertinent factual allegations contained within the Complaint – i.e., ¶¶20-25.

Put another way, Plaintiff has no standing to bring a claim for fraudulent misrepresentation. Such a claim must be brought by a party which relied upon another party's false representation to its injury. *See, e.g., Barbara Weisman, Trustee v. Kaspar*, 233 Conn. at 539. Plaintiff's Complaint alleges in relevant part that Defendant made statements, or misrepresentations, *to judicial and law*

*enforcement officials as well as, presumably, to staff members of the Connecticut Post*, and thereby presumably induced *these individuals* to act upon such statements.   Given that such alleged statements were not made to *Plaintiff* or with the intent to induce *Plaintiff* to rely upon them, and because the Complaint contains exactly no allegation that Plaintiff did rely upon them or act upon them in any way, much less to his own injury, Plaintiff cannot state a claim for false misrepresentation, or for any sort of fraud under Connecticut law.  *See, e.g., Bruce v. Home Depot, U.S.A., Inc.*, 308 F.Supp. 2d 72, 76 (D.Conn. 2004) (dismissing a fraud claim, which as noted *supra* has elements identical to those of fraudulent misrepresentation under Connecticut law, in part due to the fact that the plaintiff had "fail[ed] to allege that the person making those statement knew them to be false [or] made them to induce *Plaintiff* to act, [or] that [*Plaintiff*] did in fact act based upon these misrepresentations.")

Accordingly Count II of Plaintiff's Complaint, even when construed as a claim for fraudulent misrepresentation rather than as one for "false representation" – i.e., when construed as an existing claim under Connecticut law upon which relief may be granted – does not contain sufficient factual matter which, even when accepted as true, succeeds in stating a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. at 678.  Accordingly, it is dismissed by the Court pursuant to Fed. R. Civ. P. 12(b)(6).  For this reason the Court does not and will not reach the claims raised in Defendant's Motion to Dismiss which concern Fed. R. Civ. P. 9(b).

### 3.      Count III:  Intentional Infliction of Emotional Distress

Count III of Plaintiff's Complaint asserts a claim of intentional infliction of emotional distress.  Incorporating ¶¶1-25 of the Complaint, the entire remaining text in the Complaint comprising this Count is as below:

26.      The conduct of Defendant alleged in paragraphs 15-25 was extreme and outrageous.

27.      The conduct of Defendant alleged in paragraphs 15-25 was intended to cause, and did cause severe emotional distress to Plaintiff.

28.      The amount of damages to Plaintiff exceeds $75,000.

[Doc. 1] at ¶¶26-28.

The United States Supreme Court has repeatedly stated that while a complaint need not contain detailed factual allegations to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557). Thus a plaintiff must do more than provide labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. Count III of Plaintiff's Complaint merely recites the four elements of the tort of intentional infliction of emotional distress under Connecticut law – i.e., that (1) Defendant intended to inflict emotional distress or that Defendant knew or should have known that emotional distress was the likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that Defendant's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by Plaintiff was severe, *see, e.g., Garcia v. Hebert*, 3:08-CV-00095, 2013 WL 1294412 at *9 (D.Conn. March 28, 2013); *Appleton v. Board of Education of Town of Stonington*, 254 Conn. 205, 210 (Conn. 2000) – in a wholly conclusory fashion without any factual enhancement at all, save an incorporation of those facts pled elsewhere in the Complaint, i.e., at ¶¶1-25.

On this ground alone, the Court could dismiss Count III under Fed. R. Civ. P. 12(b)(6); "[m]ere conclusory allegations are insufficient as a matter of law to support a cause of action for

intentional infliction of emotional distress," and  Plaintiff "does not allege any facts in support of [his] intentional infliction of emotional distress claim," but rather "merely alleges that Defendant['s] conduct was extreme and outrageous – a legal conclusion." *Huff v. West Haven Board of Education*, 10 F.Supp. 2d 117, 122 (D.Conn. 1998).   Indeed, "Plaintiff's memorandum in opposition to Defendant['s] motion to dismiss similarly fails to identify any conduct by Defendant[], which if assumed to be true, constitutes extreme and outrageous behavior." *Id.*

However, even putting aside Plaintiff's failure to allege facts with any particularity in support of his claim for intentional infliction of emotional distress, liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Board of Education of Town of Stonington*, 254 Conn. at 210-11 (citation omitted).   Thus as the Connecticut Supreme Court has noted "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is stress insufficient to form the basis for an action based upon intentional infliction of emotional distress."  *Id.* at 211.   A case in which liability is found for intentional infliction of emotional distress is therefore "one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*  (citation omitted).   "Only where reasonable minds disagree does it become an issue for the jury." *Id.* at 210 (citation omitted).   Notably, "[w]hether conduct may be 'reasonably regarded' as extreme and outrageous is a question, in the first instance, for the court." *Huff v. West Haven Board of Education*, 10 F.Supp. 2d at 122.

Paragraphs 1 through 25 of Plaintiff's Complaint, which Plaintiff incorporates into his claim for intentional infliction of emotional distress, have been quoted and discussed at length *supra*. Even accepting all factual allegations contained therein as true, they could not be held or understood to state a claim for intentional infliction of emotional distress that is plausible on its face under Connecticut law. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. at 678. "The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent," and "'[e]xtreme and outrageous' conduct is defined as that which 'exceed[s] all bounds usually tolerate by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Huff v. West Haven Board of Education*, 10 F.Supp. 2d at122 (quoting *DeLaurentis v. New Haven*, 220 Conn. at 267).

Presumably, Plaintiff is seeking to assert that Defendant's alleged statements to judicial and law enforcement officers as well as to the staff of the Connecticut Post newspaper with respect to her son's whereabouts and custody issues constitute extreme and outrageous conduct in and of itself. However, "[m]ere insults, indignities, or annoyances that are not extreme and outrageous will not suffice" in order to state a claim for intentional infliction of emotional distress. *Centi v. Lexington Health Care Center*, No. CV960383535, 1997 WL 240943 at *5 (Conn. Super. May 1, 1997) (internal quotation marks and citation omitted). Rather, such liability "requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind ... Thus [i]t is the intent to cause injury that is the gravaman of the tort." *DeLaurentis v. New Haven*, 220 Conn. at 267. In addition to the fact that none of the factual allegations contained within ¶¶1-25 of Plaintiff's Complaint concerns or alleges any sort of "outrageous and extreme behavior" as above-described, there is no allegation in ¶¶1-25

30

that Defendant intended to cause Plaintiff mental distress or, for that matter, that any mental distress was actually experienced by Plaintiff, much less that such distress was severe.  The baldly conclusory allegations contained within ¶¶27-28 of Count III will not suffice in this regard.[10]

Count III of Plaintiff's Complaint is accordingly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's Motion to Dismiss [Doc. 13] in part and DENIES Defendant's Motion to Dismiss in part.  Defendant's Motion to Dismiss is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6), and Plaintiff's Complaint is DISMISSED in its entirety on such grounds.  The Court DENIES Defendant's Motion to Dismiss pursuant both to Rule 12(b)(1) and Rule 8(a), and it does not reach the claims raised within Defendant's Motion to Dismiss with respect to Rule 9(b).  The Clerk is directed to close the file.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       March 20, 2014

/s/Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge

---

[10]   The Court also notes that "[t]he absolute privilege for statements made in the course of a judicial proceeding applies equally to defamation claims and claims for intentional infliction of emotional distress," *see Gallo v. Barile*, 284 Conn. at 466; accordingly, for the same reasons the Court has held that Defendant's statements as alleged in ¶¶15 and 16 are entitled to absolute privilege from any claim of defamation, it also holds that they are entitled to such privilege from any claim of intentional infliction of emotional distress.

31